**SCARBOROUGH v. ATLANTIC COAST LINE R. CO.**

No. 6260.

United States Court of Appeals
Fourth Circuit.

Argued June 22, 1951.

Decided August 9, 1951.

936

George E. Allen, Richmond, Va., (Allen, Allen, Allen & Allen, L. Cutler May and May, Simpkins, Young & Rudd, all of Richmond, Va., on brief), for appellant.

John S. Davenport, III, Richmond, Va., (J. M. Townsend, Petersburg, Va., Howard C. Vick, and Denny, Valentine & Davenport, all of Richmond, Va., on brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This case is before us for the second time. At the first trial the District Court sustained defendant's motion to dismiss under the applicable statute of limitations. Upon appeal, we held that the statute of limitations could be tolled by the misrepresentations made by the Claims Agent of defendant, who informed plaintiff and his father that, under the statute of limitations, plaintiff, an infant, could bring suit at any time within three years after attaining his majority. We, accordingly, reversed the judgment of the District Court and remanded the case for a new trial. 4 Cir., 178 F.2d 253, 15 A.L.R.2d 491, certiorari denied 339 U.S. 919, 70 S.Ct. 621, 94 L.Ed. 1343. Plaintiff's claim is based on the Federal Employer's Liability Act.

At the second trial, the case went to the jury on both the issue of the tolling of the statute of limitations and the merits of plaintiff's claim.

The plaintiff moved for a directed verdict on the issue of the statute of limitations upon the ground that the evidence showed as a matter of law, that the defendant, through its Claims Agent, Smith, an attorney at law, represented to the plaintiff and his father time and again during the course of his investigation of the case

that the plaintiff had three years after reaching twenty-one years old within which to bring his suit; that the plaintiff relied upon his statement and, for this reason, failed to bring his suit within the three year limitation prescribed by the statute, and that such a misrepresentation, relied upon to the injury of the plaintiff, constituted constructive or legal fraud, if not actual fraud, and estopped the defendant from pleading the statute of limitations, or in relying upon it in any way as a defense of the case. This motion was denied by the District Judge. Late in the afternoon, at the conclusion of the evidence, the Court gave a comprehensive charge to the jury. In a short time, the jury returned to the court room, whereupon the foreman asked if it would be necessary for all the jurors to agree and suggested an adjournment until the next morning. The Court stated: "Your verdict must be unanimous;" but agreed to the suggested adjournment.

The next morning, counsel for defendant suggested the submission to the jury of three special issues. Over objection of plaintiff's counsel, these issues were submitted to the jury in the following language:

"In answer to the inquiry made to the Court by the foreman of the jury as to whether the verdict of the jury must be unanimous and in lieu of certain other questions shown by the record, and in order to simplify the matter for the jury, the Court at this time propounds to the jury the following issues:

"Issue No. 1. Did, Edwin C. Smith, the defendant's Claim Agent, represent to the plaintiff or his father that the railroad company recognized liability for the injury to the plaintiff and that the plaintiff had until three years after he became twenty-one years old to bring his suit?

"You will find a blank space at the conclusion of the inquiry for your answer.

"Issue No. 2. If your answers to issue No. 1 is yes, did said Smith make such representations with the deliberate intention of defrauding the plaintiff of his rights or with reckless disregard of the plaintiff's rights intending that such representation should be relied upon by the plaintiff.

"You will find a blank space at the conclusion of the inquiry for your answer.

"Issue No. 3. If your answers to issues No. 1 and No. 2 are yes in both instances, did the plaintiff in fact rely upon such representations of Smith when he failed to bring his suit until March, 1949, and if he did rely thereon, did he and his father act as ordinary prudent persons in so doing.

"There is a blank space for your answer to that issue."

After submitting the issues to the jury, the Court stated:

"Now your answers to these various issues must be unanimous. The answers should be either yes or no unless you are unable to agree. Unless you agree upon the answers to these various issues, you should report to the Court. I suggest that in that event, at the place for the answer you should insert language to the effect you are unable to agree. It is my suggestion that you take this paper with you and at this time determine your answers to these questions, if you are able to agree upon the issues.

"After you do this, then return to the Court and I will have some further suggestions to make at that time."

The jury first reported that they could not agree on the first and second issues. No response was made to the third question—one of the jurors said: "Some questions can answer partly, can't answer the other part." After an indication from the foreman that it might be possible for the jury to agree, upon further consideration, the jurors were directed to return to their room and continue their deliberations. The jury subsequently returned and answered issue No. 1, "yes"; issue No. 2, "no"; issue No. 3, "no". The jury then retired and counsel for the defendant asked the court to instruct the jury to bring in a general verdict for the defendant. Counsel for the plaintiff moved for judgment n. o. v. on the question of the right of the rail-

road company to plead the statute of limitations.

The Court granted the motion of defendant's counsel and denied the motion of plaintiff's counsel. Thereupon, under the directions of the Court, the jury returned a verdict for the defendant. Later, plaintiff moved the Court to set aside the judgment entered for defendant, to enter judgment in favor of plaintiff on the issue of the statute of limitations and to award a new trial on all other issues in the case. This motion was denied, the action was dismissed and plaintiff has appealed.

■ We cannot agree with plaintiff's contention that this case is controlled under the doctrine of Erie Railroad v. Tomkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, by the law of Virginia. The applicable statute of limitations is an integral part of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., upon which plaintiff's case is based. We are therefore concerned with the interpretation and application of a federal statute. Accordingly, the federal law, not the State law, is determinative.

It is our considered view that there was error in the manner in which this case was submitted to the jury so that the judgment below must be remanded for a new trial.

■ The submission of questions, or special issues, to the jury rests in the sound discretion of the trial judge. See Rule 49, Federal Rules of Civil Procedure, 28 U.S.C.A. It is rather unusual, though, to submit such questions to the jury after the case has been argued and has once gone to the jury under a broad and comprehensive charge. Certainly it is desirable that questions should be simple and clear, with one single issue in each question. Double questions, or questions in the alternative, should be avoided. We now consider the questions, or issues, submitted to the jury in this case, in view of these principles.

■ Issue No. 1 posed two questions to the jury. First, did Smith, the Claim Agent of defendant, "represent to the plaintiff or his father that the railroad company recognized liability for the injury to the plaintiff?" Second, did Smith represent to the plaintiff or his father "that the plaintiff had until three years after he became twenty-one years old to bring his suit?" These two issues might well have been put in separate questions. The question of recognition of liability by the railroad, though it has evidential value, is not vital. The representation as to the statute of limitations is more than vital; it is the very heart of this case.

■ Issue No. 2 (in case the jury's answer to No. 1 was "yes", which it was) really put three questions to the jury: (1) Did Smith make the representations "with the deliberate intention of defrauding the plaintiff of his rights?" (2) Did Smith make the representations "with reckless disregard of the plaintiff's rights?" (3) Did Smith make the representations "intending that such representation should be relied upon by the plaintiff?" The jury answered Issue No. 2, "no". Again, we think separate questions would have been more appropriate.

■ We believe it would have been proper, in a separate question, to submit to the jury whether Smith had a deliberate intention here of defrauding the plaintiff of his rights. Had the question been thus submitted to the jury and answered in the affirmative, and had this answer found substantial support in the evidence, a very strong (possibly the strongest) case would have been made out for the plaintiff. We feel, however, that it was not essential for plaintiff to prove deliberate fraud, nor do we think it vital here which of two labels be applied to the conduct of Smith —"actual fraud" or "constructive fraud."

■ Though the phrase "reckless disregard" of the plaintiff's rights has often been used by both text-writers and judges in this connection, we think some milder phrase, such as "utter disregard" would probably be more in keeping with the spirit of modern law.

■ We do not think the intention of · Smith, the Claim Agent, should be judged subjectively from the standpoint of Smith. It is, of course, sufficient if Smith actually

intended that plaintiff should rely upon Smith's statement as to the statute of limitations. However, whatever may have been in the mind of Smith, we think it is sufficient from plaintiff's standpoint if the nature of the statement and all the surrounding facts and circumstances indicate that the statement was made with the idea that plaintiff would rely upon it. Here we have a trustful minor, listening to a statement of the law applicable to his claim, made by the railroad's Claim Agent during the course of negotiations which might possibly lead to a peaceful settlement of that claim.

As to Issue No. 3, plaintiff could not complain if the question of his reliance upon the Claim Agent's statements had been submitted to the jury in a separate question. Even if these statements were false, and were known by Smith to be false, plaintiff would not be harmed if he clearly did not rely upon them.

We think it was clearly erroneous to submit to the jury, as the second question in Issue No. 3, whether plaintiff and his father did "act as ordinary prudent persons" in relying upon Smith's statements. In Bishop v. E. A. Strout Realty Agency, 4 Cir., 182 F.2d 503, 505, Judge Parker, speaking for our Court, said:

"We do not think that plaintiffs are precluded of recovery because they accepted and relied upon the representations of Davis as to the depth of the water without making soundings or taking other steps to ascertain their truth or falsity. The depth of the water was not a matter that was apparent to ordinary observation; Davis professed to know whereof he was speaking; and there was nothing to put plaintiffs on notice that he was not speaking the truth. There is nothing in law or in reason which requires one to deal as though dealing with a liar or a scoundrel, or that denies the protection of the law to the trustful who have been victimized by fraud. The principle underlying the caveat emptor rule was more highly regarded in former times than it is today; but it was never any credit to the law to allow one who had defrauded another to defend on the ground that his own word should not have been believed. The modern and more sensible rule is that applied by the Court of Appeals of Maryland in Standard Motor Co. v. Peltzer, 147 Md. 509, 510, 128 A. 451, where it was held not to be negligence or folly for a buyer to rely on what had been told him. This is in accord with the modern trend in all jurisdictions which is summed up in A. L. I. Restatement of Torts, sec. 540 as follows:

" 'The recipient in a business transaction of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation.' " (Italics ours.)

And, in Sainsbury v. Pennsylvania Greyhound Lines, 4 Cir., 183 F.2d 548, 551–552, we said:

"In McGrath v. Peterson, 127 Md. 412, 96 A. 551, 553, the Court of Appeals of Maryland set out an even more liberal rule in regard to avoiding contracts for fraud than obtains in the case of an action for deceit, stating that: 'In an action by one party against the other to enforce the contract, a plea of fraud may be sustained, even though the defendant may have been wanting in ordinary prudence in relying on the other's representations as to the tenor or contents of the writing.'

"See also Meyers v. Murphy, 181 Md. 98, 28 A.2d 861; Columbia Paper Bag Co. of Baltimore City v. Carr, 116 Md. 541, 551, 82 A. 442, 446; Russell v. Carman, 114 Md. 25, 78 A. 903; Wilson, Close & Co. v. Pritchett, 99 Md. 583, 58 A. 360; Prosser, Torts, 747 et seq. (1941); 5 Williston, Contracts, § 1516 (1937).

"In the case before us the reasons for vitiating the release are more cogent than in any of the cases which we have cited. Lawyers are, or should be, regarded as possessed of knowledge and integrity beyond that of most of their fellows, certainly above the level of the market place. We find nothing unreasonable or imprudent in the reliance of the plaintiff upon the words of this attorney who had won the plaintiff's confidence through his friendly overtures

and through his membership in an honorable profession. As between the parties to the release it is, of course, immaterial whether the fraud is of the factum or the inducement."

In this last case, 183 F.2d at pages 550–551, we also stated.

"The representation by Weston to plaintiff that because he was in the service he could recover only for pain and suffering was a false statement of the law. It is generally well settled that the fact that the plaintiff may receive compensation from a collateral source (or free medical care) is no defense to an action for damages against the person causing the injury. See Standard Oil Company of California v. U. S., 9 Cir., 153 F.2d 958, 963, affirmed 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067, and the cases therein cited; note, 22 A. L.R. 1558; note, 18 A.L.R. 678–683; Mc-Cormick, Damages, 310 note 2, and 324 (1935); 15 American Jurisprudence, Damages, §§ 78, 200–201; Restatement, Torts, § 920, Comment e. It is inconceivable that any member of the bar could have made a statement such as the one made by Weston without knowledge of its falsity or without acting with a reckless disregard for the truth.

"The rule is also well established that when a lawyer makes a misrepresentation of law to a layman relief may be afforded, even though the layman knows the lawyer represents an antagonistic interest. Any other rule would be unconscionable."

See, also, Jordan v. Walker, 115 Va. 109, 78 S.E. 643; Cerriglio v. Pettit, 113 Va. 533, 75 S.E. 303; Cf. Masche v. Nichols, 188 Va. 857, 51 S.E.2d 144; Hawkins & Buford v. Edwards, 117 Va. 311, 84 S.E. 654. For instructive cases, with facts close to the instant case, see, Bergeron v. Mansour, 1 Cir., 152 F.2d 27; Chesapeake & Nashville Railroad Co. v. Speakman, 114 Ky. 268, 71 S.W. 633, 63 L.R.A. 198; Howard v. West Jersey Railway Co., 102 N.J.Eq. 517, 141 A. 755; Louisville & Nashville Railway Co. v. Carter, 226 Ky. 561, 10 S.W.2d 1064.

On December 12, 1949, Smith, in a letter to Division Counsel Townsend of the railroad, wrote: "I do not deny that I informed him (the plaintiff) that he had three years, after reaching his majority, in which to institute suit." At the bottom of this letter is the following notation: "F. S. Spruill and J. M. Townsend both voluntarily admitted to Edwin C. Smith, in the office of F. S. Spruill, Rocky Mount, N. C., today that they were of the opinion that the Federal Employers' Liability Act provided that a minor had three years, after reaching his majority, in which to institute a suit for a personal injury sustained while in the employ of a railroad. What information Edwin C. Smith had about this Act was received from these gentlemen." In this connection, Division Counsel Townsend testified: "This is the letter which he wrote me on December 12th. It evidently was the same day I was there and had that talk with him. This notation, I don't know what has become of the original of that letter—I looked through my file for it and it is not there, but at any rate, that is a carbon copy as I recall of the letter that I got. This notation was made by Mr. Smith. ' * * * In the course of the conversation Mr. Spruel said that offhand I would have said that an infant had 3 years after he becomes 21 to bring a suit for personal injuries,' and I said to him that I would have been of the same opinion, that is, the state of Virginia, and without looking into the question fully I would have thought that an infant had 3 years after he became 21, and that is what Mr. Smith is referring to as the conversation we had."

The evidence thus leaves no doubt of the fact that Smith, the Claim Agent, told plaintiff that he had three years after reaching his majority to institute suit. It seems equally clear that this statement was based on information received from Division Counsel. While the fact that Smith had received the information in this way was probably thought by the jury sufficient to exculpate him of intentional fraud, it emphasizes the importance of the rule which grants relief against misrepresentations of this sort relied upon by the persons to whom they are made, whether made with intent to defraud

or not. When the Company's Claim Agent made such representation relying on what had been told him by his Division Counsel, and claimant relied upon the statement, the Company should not be allowed to escape responsibility therefor on the ground that the agent had no fraudulent intent. High minded men hesitate to take advantage of the mistakes of others; certainly no one should be allowed to take advantage of his own mistake to escape responsibility for a statement of his agent upon which another has placed reliance.

Plaintiff's brief cites a large number of Virginia cases favorable to his contentions. Among these may be noted: Union Trust Corporation v. Fugate, 172 Va. 82, 200 S.E. 624; McDaniel v. Hodges, 176 Va. 519, 11 S.E.2d 623; Chandler v. Russell, 164 Va. 318, 180 S.E. 313; Jefferson Standard Life Insurance Co. v. Hedrick, 181 Va. 824, 27 S.E.2d 198; Chandler v. Satchell, 160 Va. 160, 168 S.E. 744; Sadler v. Marsden, 160 Va. 392, 168 S.E. 357.

The directed verdict brought in by the jury and judgment for defendant were based solely on the issue of the statute of limitations. We, accordingly, express no opinion on the merits of the case.

We are asked by plaintiff's counsel to send this case back to the District Court with directions that, as to the issue of the statute of limitations, judgment be entered in favor of the plaintiff. This we cannot do. That issue, and other issues that may arise must be decided by the jury, upon proper instructions or proper issues determined in accordance with this opinion, by the District Court.

Since this case must be tried again, however, we think we should express our opinion that the District Judge was correct when he admitted in evidence, for what it may have been worth, the written statement signed by the plaintiff after the accident.

The judgment of the District Court is reversed and the case is remanded to that Court with directions to grant a new trial.

Reversed and remanded for new trial.